IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JENNIFER FOLEY, individually and as the representative of a class of similarly-situated persons,<br><br>      Plaintiff,<br><br>  v.<br><br>STUDENT ASSISTANCE CORPORATION,<br><br>      Defendant. | No. 17-cv-01702-LA<br><br>Hon. Lynn Adelman<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR ATTORNEYS' FEES**

Plaintiff, Jennifer Foley ("Plaintiff" or "Foley"), on behalf of herself and as a representative of the class of persons defined below in Section II.A. (the "Class"), and with the consent of defendant Student Assistance Corporation ("Defendant" or "SAC"), respectfully requests that the Court enter an order pursuant to Fed. R. Civ. P. 23(e) that: (i) preliminarily approves the Class Settlement Agreement ("Settlement Agreement"), attached hereto as Exhibit A; (ii) approves the mailing of notice to the Class in the form of Exhibit 2 to Exhibit A; (iii) finds that the mailing of such notice will satisfy Rule 23 and Due Process; and (iv) schedules a hearing for final approval of the Settlement Agreement. A copy of the proposed preliminary approval order is attached as Exhibit 1 to Exhibit A.

**I. SUMMARY OF CLAIMS AND LITIGATION**

This case arose out of Defendant's practice of sending letters to third parties requesting they supply borrower e-mail addresses, allegedly in violation of the FDCPA and concomitant privacy interests: "If you have current mailing address, telephone number *and/or E-mail address* for JENNIFER L. FOLEY, please contact us…." ECF 1-2 and 1-3 (italics emphasis added.)

1

Plaintiff alleged the letters violated the FDCPA because Defendant may not lawfully request borrower e-mail addresses from third parties. The FDCPA allows communication with third parties to confirm consumer "location information," but does not allow asking for consumers' e-mail addresses or any other efforts to invade consumers' privacy. 15 U.S.C. §§ 1692a (7), b & c.[1] Therefore, Plaintiff argued Defendant's letters at issue constituted prohibited third-party communications and invasions of privacy.

After nearly four years of litigation, including the Court's certification of a contested class, Plaintiff and Defendant have entered into the Settlement Agreement, proposing to resolve all the Class's claims for the total amount of Two Hundred and Fifty Thousand Dollars ($250,000.00). The proposed Settlement Agreement is the result of rigorous, arm's-length negotiations by the parties and their counsel.

Class Counsel has analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering and collecting damages in excess of those obtained through this settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals. Based upon counsel's review and analysis, the parties have entered into the Settlement Agreement to settle and compromise the litigation on the terms and conditions embodied in the Settlement Agreement.

---

[1] Specifically, § 1692b (3) allows communication with third parties only once for "location information." However, the "location information" definition only allows requests for place of residence, telephone number and place of employment, but excludes e-mail addresses. 15 U.S.C. § 1692a (7).

## II. TERMS OF THE SETTLEMENT

### A. Class Definition

The proposed Class is defined as: "The 747 current or former student loan borrowers about whom [defendant] SAC has located a letter it sent to a third party requesting contact or location information, and including email addresses." <u>Exhibit A</u> ¶18. According to Defendant's records, 747 persons fell within the class definition in the Court's Order granting Plaintiff's Motion for Class Certification (Doc. 37), so the Settlement Class includes those 747 persons.[2]

### B. Benefits to the Class Members

Pursuant to the terms of the Settlement, defendant will pay a total of $250,000.00 into a settlement fund. From that fund, approximately $147,150 will be equally distributed to 747 class members, for an award amount of approximately $196.99 per class member (taking into account amounts anticipated to be paid from the fund for fees, expenses, incentive award, and administration of the settlement).

The FDCPA caps a class's recovery. In an individual action, the person bringing the suit may recover (i) any actual damages sustained as a result of the alleged violation; and (ii) statutory damages between $0 and $1,000.00. In a class action, the maximum possible recovery is (i) any actual damages sustained as a result of the alleged violation by the class members and (ii) the lesser of 1% of the Defendant's net worth or $500,000.00. The Court, in its discretion, may award anything up to the maximum amount to a prevailing party. In either an individual or class action, the person bringing the suit can also recover attorneys' fees and the expenses of prosecuting the

---

[2] On March 5, 2020, the Court certified the following class: "All persons in the States of Wisconsin, Illinois, and Indiana who were the subject of a letter Student Assistance Corporation sent on or after December 6, 2016, requesting their email address from a third party." Doc. 37. The Class includes all persons the parties can identify as falling within the litigation class certified by the Court.

suit, if it is successful. Here, as noted, Defendant is willing to pay 50% of the absolute maximum recovery the class could recover—if Defendant had a net worth over $50 million. As discussed below, Defendant arguably has no assets.

Importantly, the settlement also imposes no administrative burdens on the class members to receive the settlement proceeds, as checks will be mailed to every class member without requiring a claims process. Consequently, class counsel believes this is a fair and reasonable settlement.

### C. *Cy Pres* Distribution

Under no circumstance will any of the settlement fund revert to Defendant. To whatever extent that checks are uncashed after 120 days have passed from the date of mailing the checks, such money remaining will comprise the *cy pres* distribution. Subject to approval by the Court, the *cy pres* distribution shall be made to the National Endowment for Financial Education. The *cy pres* distribution shall be made 60 days after the last day for Class members to cash their Settlement Awards. Exhibit A, Section F. 4.

### D. Class Notice

The settlement administrator will mail notice to each individual Class member by first class United States mail at the address reflected in the reasonably available computerized account records of Defendant. The settlement administrator shall perform a national change of address update prior to mailing such notice and update the addresses as appropriate. Exhibit A, Section E. 1.

Additionally, a website will be constructed and maintained by the settlement administrator who shall post the notice, the Settlement Agreement, the preliminary approval order, and any other materials the parties agree upon to said Website. Exhibit A, Section D.

4

### E. Opt-Out Procedure and Opportunity to Object

Any Class member may request an exclusion from the Settlement by sending a written request to the settlement administrator by the deadline for doing so. Exhibit A, Section J. 2, K. 1. Any Class member may object to the terms of the Settlement Agreement by filing a written objection with the Court by the deadline for doing so. *Id.*

### F. Release

In consideration for the settlement, as detailed in the Settlement Agreement, Class members are releasing all claims they made, could have made, or in any way arise out of any allegations that were or could have been made by any Class member concerning alleged wrongdoing during the period consistent with the class definition. Exhibit A, Section G.

### G. Attorneys' Fees and Expenses

Subject to Court approval, Defendant shall pay counsel for Plaintiff and the Class that amount of attorneys' fees, costs and expenses awarded by the Court not to exceed $96,200.

### H. Service Award to Plaintiff

Subject to Court approval, Defendant shall pay a service award of $3,000 to Plaintiff Jennifer Foley for her individual recovery and service as class representative.

## III. PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED.

The question presented on a motion for preliminary approval of a class action settlement is whether the proposed settlement is "within the range of possible approval." *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Kaufman v. Am. Exp. Travel Related Services Co., Inc.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009); *Manual for Complex Litigation*, (4th ed.), §21.62 and §21.63. Preliminary approval is the prerequisite to giving notice so that "the proposed settlement ... may be submitted to members of the prospective class for their acceptance or rejection." *Armstrong v.*

*Board of School Directors*, *supra*, 616 F.2d at 314. The court does not render a final decision as to whether the proposed settlement is fair, reasonable and adequate until the fairness hearing after the class has had an opportunity to comment on the settlement. *Id*.

Federal Rule of Civil Procedure 23(e) requires, "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted). It is axiomatic that courts look with great favor upon the voluntary resolution of litigation through settlement. *Du Puy v. Director, Office of Workers' Compensation Programs*, 519 F.2d 536, 541 (7th Cir. 1975), *cert. denied*, 424 U.S. 965 (1976).

"In reviewing a proposed settlement, the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds* by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id*.

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)).

Preliminary approval requires only that the settlement figure is within a "reasonable range." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2011 WL 3290302, at *7 (N.D. Ill. July 26, 2011). To grant preliminary approval, a court need only find that there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its

6

fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d at 634 (quoting *Manual For Complex Litigation* (3d ed.) § 1.46 n.10) (internal quotation marks omitted); ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11:25 (4th ed. Updated June 2008) (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness ... and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted).

When determining whether a settlement falls within the range of possible final approval, a district court's inquiry is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby,* 75 F.3d at 1196 (citations omitted); *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). However, courts must "give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Eubank v. Pella Corp.*, 753 F.3d 718, 723 (7th Cir. 2014) (citing *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004)).

In making this determination, a court considers five factors: (1) the strength of plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Am. Int'l Grp., Inc.*, 2012 WL 651727, at *2 (citing *Synfuel Techs., Inc. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Here, these factors weigh in favor of preliminary approval.

    **A.    The recovery provided to the Class measured against the strength of the case, as well as the complexity, length, and expense of continued litigation, weigh in favor of approval.**

In evaluating a proposed settlement, a court recognizes that the "essence of settlement is compromise" and will not represent a total win for either side. *Isby*, 75 F.3d at 1200, *quoting*

7

*Armstrong v. Board of Sch. Dir.*, 616 F.2d 305, 315 (7th Cir. 1980). The court is not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 534 (D. N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998); *E.E.O.C. v. Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985).

Here, Defendant vigorously disputes that its conduct violated the FDCPA. For example, Defendant argues it was merely a loan servicer, and not a debt collector as that term is defined by the FDCPA. *See e.g., Qurashi v. Ocwen Loan Servicing, L.L.C.*, 760 Fed. Appx. 66 (6th Cir. 2019); *Keeton v. Countrywide Home Loans, Inc.*, 217 F. Supp. 3d 177 (D.D.C. 2016). Accordingly, should this lawsuit proceed to trial, there is a cognizable risk that the Class members would lose this or some other essential issue and, thus, recover nothing at all.

Moreover, even if the claims arising out of the FDCPA would ultimately prevail, actual monetary recovery for those claims also would be problematic. Defendant is "no longer in business, has no employees, and does not perform any function whatsoever as a company…." Doc. 37, p. 9. Defendant's parent company assumed all of its assets and liabilities. *Id.* Consequently, Defendant has a plausible argument that its net worth is $0, bringing the FDCPA statutory class action "damages cap" on any recovery to $0. 15 U.S.C. § 1692k(a)(2)(B) (The FDCPA limits a defendant's liability in a class action to statutory damages not exceeding the lesser of $500,000 or one percent of the defendant's net worth).

In order to gain any recovery for the Class, Plaintiff would have to go to trial and obtain a judgment. Then, Plaintiff must attempt to collect against Defendant's parent company. If unsuccessful, the Class would likely recover nothing.

Thus, the Settlement is a particularly favorable result as the parties have agreed to an amount that substantially exceeds Defendant's reported net worth. Further, by settling this matter, the parties avoid the expense of trial and uncertainty of outcome. If this matter proceeded to trial, the net value of the recovery could be further decreased due to the costs of compelling further discovery, retaining expert witnesses, preparing for trial and, possibly, engaging in post-trial matters, including the lodging of an appeal. Therefore, the parties' Settlement is not only fair, adequate, and reasonable for all involved, but also an outstanding result for the Class.

Litigation through trial would be complex, costly, and lengthy. By reaching a favorable settlement prior to trial, Plaintiff and the Class avoid significant expense and delay, and instead ensure a significant and early recovery for the Class members. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Fitzsimmons*, 778 F.2d at 309. Although Plaintiff believes her case is strong, it is subject to considerable delay, risks, and costs if the case is not settled. The years of additional litigation would unnecessarily increase both the expense of the litigation and the risk for Class members. *Isby,* 75 F.3d at 1199; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000).

As to delay, continued litigation also carries with it a decrease in the time value of money; "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Fitzsimmons*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). The Settlement Agreement, on the other hand, provides substantial immediate benefits. Therefore, this factor also weighs in favor of preliminary approval.

### B. The amount of opposition by class members.

The analysis of this factor is premature. *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 349 (N.D. Ill. 2010). The Court should analyze this factor after the class notice is sent and the members of the Class have had an opportunity to comment on the Settlement Agreement, including filing a request for exclusion or an objection.

### C. Class Counsel consider the settlement fair, reasonable, and adequate.

Courts give considerable weight to the opinion of experienced counsel supporting a proposed class action settlement. *See, e.g., Armstrong v. Board of School Directors, supra*, 616 F.2d at 325; *Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2nd Cir. 1982); *In re Mexico Money Transfer Litigation, supra*, 164 F. Supp. 2d at 1020. In fact, courts are "entitled to rely heavily on the opinion of competent counsel," *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong v. Board of School Directors, supra*, 616 F.2d at 325); *Isby,* 75 F.3d at 1200.

This Court previously recognized that class counsel are experienced in litigating and settling consumer class actions and other complex matters. Doc. 37, p. 4 n.4. Class counsel are well positioned to form their opinion after having actively litigated this case for nearly four years, including written discovery, depositions, and class certification motion practice. During that time, class counsel spent hours researching and investigating claims, allegations, and defenses, considering the likelihood of an appeal, and reviewing hundreds of pages of documents. These factors, as well as the result, compel the conclusion that the Settlement Agreement is a result of arms-length negotiation, and not collusion. *See Isby*, 75 F.3d at 1200. It is the opinion of class counsel that this settlement is fair, reasonable, and adequate.

### D. Stage of the proceedings and the amount of discovery completed.

Plaintiff filed her complaint in December 2017. Doc. 1. Extensive written discovery was exchanged over the course of many months, and the parties were deposed. The parties briefed Plaintiff's motion for class certification, and the Court certified a contested class. As a consequence of the above, the parties have had ample opportunity to consider the merits and risks of litigating compared to settling. Accordingly, this factor weighs in favor of preliminary approval. *See Veness v. Haywood, Cari & Anderson, S.C.*, 17-cv-338-bbc, 2017 U.S. Dist. LEXIS 219702, *14 (W.D. Wis. Dec. 29, 2017) (granting preliminary approval of class action settlement and class certification in FDCPA case) (Crabb, D.J.).

Courts regularly approve settlements where all essential information was discovered before settlement. *See Isby*, 75 F.3d 1191 (approving settlement early in case where the parties had conducted a thorough investigation of the background and facts pertinent to the claims). Courts also encourage parties to settle class actions early, without expending unnecessary resources. *McCue v. MB Fin., Inc.*, 15 CV 988, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015), quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *5 (S.D.N.Y. Oct. 2, 2013).

In sum, the issues presented in the case, the relevant documents, and oral discovery all have been reviewed and examined. Class counsel believe that no further investigation, discovery, or analysis would change their evaluation of the case or about this settlement. The Settlement Agreement is ready for preliminary approval based on its terms and conditions.

### IV. CLASS COUNSEL'S REQUESTED ATTORNEY FEE IS APPROPRIATE.[3]

---

[3] While the Court is not expected to rule on the fee, expense, and service awards until final approval, Plaintiff presents the arguments now—before the objection deadline—in compliance

Under the terms of the Agreement, Defendant will pay Plaintiff's attorney fees and out-of-pocket expenses totaling $96,200 out of the non-reversionary settlement fund ($250,000.00). The total will not change, but the breakdown between the two, at present corresponds to $91,869.01 in attorneys' fees and $4,330.99 in expenses.[4] Summary of Expenses, Exhibit B. As discussed below, this request is supported by either the "percentage of the fund" or "lodestar" method for determining attorney's fees. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1010 (7th Cir. 1998) ("the choice between the lodestar and percentage-of-fund methods is neither a question of law nor of fact; rather, a district judge has discretion to use either method, depending on the particular circumstances of the case"); *Stumpf v. Pyod, LLC*, No. 12 C 4688, 2013 WL 5753829 at *2-3 (N.D. Ill. Oct. 23, 2013) (either calculation method available in FDCPA cases), *discussing In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011).

The U.S. Supreme Court has held that negotiated, agreed-upon attorneys' fee provisions, such as the one here, are the "ideal" towards which the parties should strive: "A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). In *Malchman v. Davis*, 761 F.2d 893 (2d Cir. 1985), a federal court of appeals concluded that courts should not interfere in fee arrangements between settling class action parties when the defendant has agreed to pay the fees:

> [W]here . . . the amount of the fees is important to the party paying them, as well as the attorney recipient, its seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the Plaintiffs do not want to be sandbagged. It is difficult to see how this could be

---

with *Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014), *cert. denied sub nom., Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429, 191 L. Ed. 2d 366 (2015).

[4] Should counsel incur additional expense, such as for travel to an in-person approval hearing, it would increase the expense component and decrease the fee component of counsel's request accordingly. Additional time will be expended, certainly, but the total fee request will not increase.

left entirely to the courts for determination after the settlement. [761 F.2d at 905 n. 5].

### A. Percentage Method

Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). It is well-settled that the attorneys who create a benefit for class members are entitled to compensation for their services. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). "When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund." *Gaskill*, 160 F.3d at 362-63 (affirming award of 38% of $20 million), *citing Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

Where lawyers working on a contingency basis in the relevant community typically charge 33% to 40% of any recovery to a private client, this shows that a similar fee is appropriate in a contingency class action. *Id.*; *see also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:80 (4th ed. Updated June 2008); *Taubenfeld v. Aon Corp.*, 415 F.3d 597 (7th Cir. 2005) (approving award of fees equal to 30% of $7.25 million settlement plus $111,054.06 in expenses and citing with approval a submission showing thirteen cases in the Northern District with awards of 30-39% of common funds in class actions); *In re Continental Illinois Securities Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client. … We know that in personal-injury suits the usual range for contingent fees is between 33 and 50 percent…."). Here, the fee request is 36.7% of the $250,000 fund—well within the ranges discussed. It is therefore appropriate.

## B. Lodestar Method

Moreover, the agreement regarding fees and expenses is also reasonable and proper under the lodestar method. To date, Class Counsel have expended more than 363 total hours for a lodestar in excess of $200,000 (not including time spent on this motion or time to be spent moving forward with the settlement) as follows:

| Professional | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Phillip A. Bock (JD 1994) | 12.1 | $750.00 | 9,075.00 |
| Tod A. Lewis (JD 1998) | 88.4 | $695.00 | 61,438.00 |
| David M. Oppenheim (JD 2002) | 21.9 | $695.00 | 15,220.50 |
| Mara Ann Baltabols (JD 2009) | 227.6 | $505.00 | 114,938.00 |
| Michael J. Roman (JD 2010) | 2.3 | $495.00 | 1,138.50 |
| Molly Stemper (JD 2015) | 3.1 | $450.00 | 1,395.00 |
| Kimberly M. Watt (JD 2012) | 0.1 | $420.00 | 42.00 |
| Douglass R. Nolan (PLG) | 4.0 | $175.00 | 700.00 |
| Marie Ang (PLG) | 2.1 | $175.00 | 367.50 |
| Neil A. Hynes (PLG) | 0.5 | $160.00 | 80.00 |
| Joanna P. Kluzowska (PLG) | 1.2 | $140.00 | 168.00 |
| **Totals** | **363.3** | | **204,562.50** |

These billing rates are our current and customary rates in class action work, reflecting both years of experience and concentration in this field. The rates are consistent with the Laffey Matrix. The current adjusted Laffey Matrix is available at http://www.laffeymatrix.com/see.html. It identifies reasonable current billing rates of $864 for attorneys with 20+ years' experience, $717 for attorneys with 11-19 years' experience, $636 for attorneys with 8-10 years' experience, $440 for attorneys with 4-7 years' experience, and $359 for attorneys with 1-3 years' experience.

These rates are consistent with the hourly rates that are normally charged in the community where counsel practice, *i.e.*, the "market price." *See, e.g., Blum v. Stenson*, 465 U.S. 886 at 895; *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("in most cases, billing rates reflect market rates – they provide an efficient and fair short-cut for determining the market rate"); *Spencer v. Comserv Corp.*, 1986 WL 15155, Fed. Sec. L. Rep. ¶93,124 at 95, 532 (D. Minn. Dec.

14

30, 1986) ("compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); *Lindy Bros.Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate.").

Moreover, the agreed amount represents a payment of $252.87/hour for the hours worked by class counsel. *Compare Broome v. Kohn Law Firm, S.C.*, No. 18-cv-860, 2019 WL 1595864 (W.D. Wis., Apr. 15, 2019) ($398.45/hr ($22,333.25 for 56.05 hours)).

Class counsel undertook this case on a contingency basis and achieved an excellent result in a fair and efficient manner. Class counsel resolved this case through unique capabilities from their years of consumer class action experience. If the Court finds that the settlement is fair, reasonable, and adequate, it should approve the payment of fees and expenses totaling $96,200.

## V.       The Service Award to Plaintiff.

If the Settlement is approved, Defendant has agreed to pay Plaintiff $3,000 from the settlement fund for serving as the class representative. Doc. 122-1 at ¶ 9. Courts routinely award such "service awards" to the persons who assume the special litigation burden of class representative and thereby benefit the entire class. *See Cook,* 142 F.3d at 1016 (affirming $25,000 incentive award to class representative because "a named plaintiff is an essential ingredient of any class action, [and] an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 367 (S.D. Ohio 1990) (approving two incentive awards of $55,000 and three of $35,000 to five representatives).

Class action suits conserve judicial and litigant resources. *GMAC Mtge. Corp. v. Stapleton*, 236 Ill. App. 3d 486, 497, *citing* C. Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiff in Class Litigation, 78 Ill. B.J. 286 (June 1990). Class representatives assume the burdens of

15

litigation that absent class members do not shoulder and do so without promise of a reward and with the risk that the litigation may not succeed. The class representative in this case was no exception. But for her initiative and participation, the benefits available to all Class members would not have been realized.

Specifically, Plaintiff worked with counsel to file the complaint, answered discovery, sat for a deposition, and discussed the litigation with class counsel throughout the four-year course of this action. As such, the circumstances are comparable to those in the cases cited above.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court preliminarily approve the settlement, direct that notice be sent to the Class, and set a date and time for a final approval hearing.

Respectfully submitted,

JENNIFER L. FOLEY, individually and as the representative of a class of similarly-situated persons,

By: s/ David M. Oppenheim
      One of their attorneys

Phillip A. Bock
David M. Oppenheim
Bock Hatch & Oppenheim LLC
134 N. La Salle St., Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that, on August 24, 2021, he caused a copy of the foregoing to be served on all counsel of record via the Court's ECF system.

/s/ David M. Oppenheim
One of Plaintiffs' Attorneys